## ELLIOT *v.* CONCORD.

Towns are liable, in the first instance, for special damages occasioned by any obstruction placed in a public highway, without right, by any person or corporation.

A railroad company was required, by its charter, so to construct its railroad as not to obstruct the safe and convenient use of any highway. While building an embankment for their track across a highway, a traveller sustained special damage from the obstruction. *Held*, the town was liable to the sufferer.

CASE, for damages sustained by reason of an injury to the wife of the plaintiff, while travelling upon a public highway in said town, from an alleged defect therein.

Upon the trial, on the general issue, it appeared in evidence that the highway in question had been used as a public highway more than twenty years prior to the 17th of June, 1849; that on that day the wife of the plaintiff was riding in a wagon along said highway, and upon arriving at the place where the Concord and Claremont Railroad crosses the highway, she found laborers there, employed in filling in earth and sand across said highway, for the purpose of making an embankment, to be raised about two feet above the surface of the highway, and upon which were to be laid the rails for the track of said railroad; that at that time the embankment, to the depth of about two feet, had been extended from the east side about two-thirds the distance across the travelled part of the highway; that the embankment, at its termination and at its sides, in the travelled part of the highway, was so steep that it could not be passed over with a carriage, and that this had been the situation of the embankment for several days preceding the 17th of June; that in consequence of this obstruction to the travel along the east side and middle of the travelled part of the highway, carriages were obliged to pass along the west side of the travelled part of the highway, and very near to the gutter or ditch, on the west side, in order to pass round the end of the embankment; that when the plaintiff's wife came

to this place, on the 17th of June, the laborers were engaged in carting earth and sand into this passage way against the end of the embankment, and also each way beyond the line of the embankment, for the purpose of continuing the embankment across the highway, and also for the purpose of filling up the highway along its west side, sloping off each way from the embankment to a proper grade for carriages to pass over the embankment; that several cart loads of sand had been dumped down, both in the line of the embankment and each way beyond it, which had been slightly levelled off, but so as to leave the surface of the passage way uneven, though not so much so as to prevent carriages from passing, if the surface had been sufficiently hard to prevent the wheels from sinking deep in the sand; that one of the laborers undertook to lead the horse which the plaintiff's wife was driving, along over this sand, and at or very near the point where the line of the embankment crosses the highway the wheels upon one side of the wagon sunk so deeply into the sand as to throw the wife of the plaintiff out of the wagon, and against a pile of boards lying in or very near the gutter, on the west side of the highway, whereby she was severely injured.

It was proved or admitted, upon the trial, that the Concord and Claremont Railroad had been duly laid out across said highway prior to the said 17th of June, and that the place where said accident happened was within the limits of land taken by said railroad company for their railroad, under the authority of their act of incorporation and of the laws of this State. On the part of the defendants, it was contended that upon the foregoing facts, and under the powers conferred on said railroad company, the action could not be maintained, and a nonsuit was ordered by the court, said nonsuit to stand, or to be set aside and the cause stand for trial, according to the opinion of the superior court.

*Fowler* and *Perley*, for the defendants.

The duty of towns to maintain roads, and their liability for special damages, depend wholly upon the statute. And the power of towns is, in this respect, commensurate with their duty and liability. Rev. Stat. ch. 55, § 15; ch. 57, §§ 1, 2; ch. 59, § 1.

This accident happened within the limits assigned to the railroad for their track, and while the railroad were in possession under their charter; and if it happened by any defect in the highway, the defect was caused by the manner in which the railroad exercised the duty imposed on them by the act of incorporation, with which the town could not interfere.

The highway was not, perhaps, discontinued, but the duty of keeping it in repair and making it passable, while the railroad was in course of construction, was transferred from the town to the railroad. The case does not show that the town, or any officer of the town, was guilty of any neglect of any duty that they could perform.

The statute creating this corporation is inconsistent with the prior law, and, therefore, repeals it by implication. Bac. Ab. Stat. D.; Com. Dig. Parliament, R. 9. a.; *Mc Quitkin* v. *Doe*, 8 Blackf. 581; *State* v. *Hampton*, 2 N. H. Rep. 22. The act incorporating the railroad makes it their duty to see that the crossings are sufficient, and if an individual suffer a special damage from their neglect to perform this public duty, they are liable to an action. *Riddle* v. *Locks and Canals*, 7 Mass. Rep. 169; *Henley* v. *Mayor, &c. of Lynn*, 5 Bing. 91; *King* v. *Kerrison*, 3 M. & S. 526.

*Morrison* and *Wheeler*, for the plaintiff.

The first question presented in this case is whether the statute creating the railroad corporation operates as a repeal of the statute law, rendering towns liable for damages occasioned by defects in a highway, or whether it changes such liability from the towns to the railroad corporation.

The plaintiff contends that such is not its operation, but

that it is the duty of the towns to keep the highway in good repair, so that persons may safely pass and repass over the same. See act of incorporation, § 6.

The case of *State* v. *Hampton*, 2 N. H. Rep. 22, cited by the defendants' counsel, does not sustain his position. This was an indictment against the town of Hampton, for not repairing a highway in that town. The court held that the highway was discontinued by the laying out of a turnpike highway over the same.

The case cited by the defendants' counsel, in 7 Mass. Reports, does not apply, because the act of incorporation makes it the duty of the selectmen, in case of the neglect of the railroad corporation, to cause the same to be kept in repair.

The case shows that for several days before the accident an embankment, about two feet high, extending about two-thirds the way across the highway, had remained in said highway; that the town, at a trifling expense, could have sloped the said embankment, or filled in either side of the same, so as to render it safe and convenient for public travel, which must have come to the knowledge of the town, and they were bound to repair the same.

Under the provisions of the statute and of the act of incorporation, the plaintiff may have a remedy against the town or the railroad corporation, and there is nothing inconsistent in the provisions of the latter, which would operate as a repeal of the former.

BELL, J. We think a careful comparison of the statutory provisions bearing upon this case, will furnish the rule for its decision. The Revised Statutes, ch. 57, § 1, prescribes the liability of towns. " In case any special damage shall happen to any person, or to his team or carriage, by reason of the obstructions, insufficiency or want of repair of any highway or bridge in any town, the person injured shall recover his damage in any action against such town."

Elliot *v.* Concord.

The second section following and the fifth section of chapter 59, give to the town a remedy over. " The town shall have a remedy over against any surveyor of highways, through whose fault or neglect the said damage happened." " If any person shall place in any highway or street any timber, lumber, stones, or anything whatever to the incumbrance or obstruction thereof, he shall be liable to the town for all damages and costs, which said town may be compelled to pay to any person who has sustained damage by reason of such incumbrance or obstruction."

These provisions point out the general policy of the law, which is to subject the town to the action of the party who suffers damage from the " obstructions, insufficiency or want of repair of a highway," and leave the town to obtain its indemnity from those through whose neglect or misconduct the defect of the highway has arisen.

It is a settled principle, that any person who places an obstruction in a public highway, or causes any defect in it, is, at common law, liable to any person who sustains a special damage from that cause. Woolrich on Ways 53; *Williams' Case*, 5 Co. Rep. 73; 1 Ch. Pl. 126; and we may well suppose that one motive, perhaps a principal one, for the statute provision imposing this liability on towns, was to avoid the constantly recurring question, whether the party in fault was the town or some other party, and the consequent risk that many meritorious actions might fail.

The charter of this railroad is a public law. Stat. 1848, ch. 659. The provision under which they claim and exercise the right to construct their road across public highways, is found in the sixth section. " And if said railroad shall, in the course thereof, intersect or cross any canal, turnpike, road, or other public highway, the said railroad shall be so constructed as not to obstruct the safe and convenient use of such canal, turnpike, road, or other highway."

It is assumed, in the argument, that the railroad corporation had the right, by virtue of this charter, to obstruct the

Elliot *v.* Concord.

highway, while their road was in process of construction; but it seems to us that this was a right not conferred upon them by this section, however it might be granted by implication, in a case where the railroad could not otherwise be built, which, it is apparent, was not this case.

The railroad is to be so constructed as not to obstruct the safe and convenient use of such highway, either while it is making, or after it is completed. The language used applies, in its natural construction, equally to both these cases. The case finds that the railroad corporation, though thus forbidden to do so by their charter, did so construct their railway that they did obstruct the safe and convenient use of this road, at the time and place where this accident occurred, and thus occasioned the damage of which the plaintiff complains. The case further finds that the obstruction was occasioned by the laborers, employed in building the road, having filled in earth and sand about two-thirds of the distance across the highway, for the purpose of making an embankment for the rails, and this embankment, at its termination and at its sides, in the travelled part of the highway, was so steep that it could not be passed over safely with a carriage. This, then, seems to us the precise case described in section 5, before quoted, where the person, (which word includes corporations, Rev. Stat. ch. 1, § 8,) placing anything whatever in the highway, to the incumbrance or obstruction thereof, is made liable to the town for the damages and costs, which the town may be compelled to pay to any person injured. In such a case, it cannot admit of question that the town is liable, in the first instance, to the sufferer. *Willard* v. *Newbury,* 22 Vt. Rep. 458; *Batty* v. *Duxbury,* 24 Vt. Rep. 155.

The nonsuit was, consequently, improperly ordered, and it must be set aside, that the case may stand for trial.