Merrimack,  
Nov. 3, 1903.

SAUCIER v. NEW HAMPSHIRE SPINNING MILLS.

In an action for personal injuries alleged to have been caused by defective machinery, evidence of subsequent experiments is admissible if they are shown to have been made under conditions similar to those in existence at the time of the accident.

A servant who represents himself to be skilled and experienced, and is hired as such, is presumed to know and appreciate the dangers incident to the operation of machinery commonly used in the work he is employed to perform; and evidence that a machine by which he was injured lacked a safety device attached to similar machines upon which he was previously employed in another establishment, is inadmissible to show negligence on the part of the master, in the absence of proof that such device was in common and ordinary use.

Evidence offered by the plaintiff after the close of the defendant's case may be excluded if it is not strictly rebutting.

A verdict is not to be set aside on the ground of erroneous instructions if it is apparent from the whole charge that the jury were not misled thereby.

A request for instructions is properly denied when there is no evidence to which they are applicable.

CASE, for personal injuries alleged to have been received by reason of the defendants' failure to furnish a reasonably safe carding machine and to instruct or warn the plaintiff. Trial by jury and verdict for the defendants. Transferred from the April term, 1902, of the superior court by *Peaslee*, J.

The plaintiff is a deaf mute and a skillful operator of machines known as revolving-top flat cards. At the time of his employment he informed the defendants that he was familiar with such cards and was an experienced stripper, and he was hired as such. He had worked for the defendants about a week prior to the accident, and was not in any respect instructed or warned. There was evidence that in all mills except the defendants' it is the duty of the grinder to clean the hinges and jamb of the door of the carding machines. One Chenette was employed by the defendants on the morning of the day of the accident, and was set to work with the plaintiff stripping cards, the plaintiff showing him how to do the work. It was the plaintiff's duty to open the doors of the machines, and Chenette's duty to close them. There was some evidence tending to show that the door of the machine upon which the plaintiff was injured was left open by Chenette; but there was no evidence of other negligence on Chenette's part, or that he was not competent to close the door. While the plaintiff was operating the machine, his hand came in contact with the card clothing, by reason of the door in question being open, and he received the injury for which he seeks to recover.

Experts called by the plaintiff testified that all revolving-top flat cards work on the same principle, and that any man who could operate one make would be competent to operate any other. They also described the different fastening devices in common use and the merits of each, stating that an unfastened door might be thrown open more or less by a thick piece of cotton in the lap, or by some foreign substance passing through the card, or by an accumulation of matter in the hinges or on the jamb of the door. There was evidence that the door might have been knocked open by the plaintiff while cleaning the card; but there was no direct evidence as to how it came to be open at the time of the plaintiff's injury.

Evidence as to the method by which the doors of carding machines were prevented from coming open in two mills in Suncook (the only ones in which the plaintiff had worked), and as to his duties in those mills, was excluded, subject to exception. The facts relating to other exceptions taken by the plaintiff to the admission and exclusion of evidence, to instructions given the jury, and to the refusal of the court to give instructions requested, sufficiently appear in the opinion.

*Martin & Howe* and *Walter S. Peaslee*, for the plaintiff.

*Samuel C. Eastman* and *Eastman & Hollis*, for the defendants.

BINGHAM, J.  1. One of the grounds upon which the plaintiff relied at the trial to establish the defendants' negligence was that

the door to the cylinder of the machine upon which he was working had no fastening device upon it to keep it closed, and might have been thrown open by a thick place in the lap which he was putting through the machine when the accident occurred, and that he did not know of this alleged danger and was not instructed or warned in respect to it.

In answer to this claim, the defendants were permitted to show by their witness Gould that he had made experiments on the same machine since the accident, by putting through it the kind of lap that was being carded when the accident occurred, and that it did not throw the door · open. His method was to use a perfect lap, and to put pieces of lap in spots on top of the lap that was being run through the machine and in front of the feed-rolls, to produce a similar condition, with like effect upon the feed-rolls and the door, to that existing at the time of the accident. The only evidence of the condition of the lap in use when the accident took place was that it was an ordinary lap ; but whether it had thick places in it, or differed from the lap used in the experiment, does not appear. The trial judge, when he permitted the testimony in regard to the experiment to be introduced, must have considered that the conditions then made use of were as nearly like those in existence at the time of the accident as could be ascertained from the evidence, and we are of the opinion that he was justified in this conclusion. *Colburn* v. *Groton*, 66 N. H. 151. Where the conditions are similar, it has uniformly been held that proof of this character is legally competent. *Whitcher* v. *Railroad*, 70 N. H. 242, 248 ; *Cook* v. *New Durham*, 64 N. H. 419 ; *Darling* v. *Westmoreland*, 52 N. H. 401.

2. The plaintiff was a skillful operator upon machines known as revolving-top flat cards. He was employed by the defendants as an experienced stripper. There is a door on these cards opening upon a revolving cylinder covered with card clothing, which should be kept closed except when the card is stripped or ground. All makes of these cards operate the same, but the devices for fastening the doors vary. Some have doors with weighted ends, but on the defendants' machines the doors were not weighted. There was nothing to keep them closed but their own weight. The plaintiff did not know the alleged danger of the door being thrown open, and was not warned or instructed in any respect by the defendants. He had never operated cards with doors like these, but the defendants did not know this, and the plaintiff did not inform them of it.

The defendants were entitled to rely upon the plaintiff's representation that he was a skilled and experienced workman upon revolving-top flat cards, and to understand that he knew and appreciated the dangers liable to arise from the operation of cards

that were in common use.   If the door to the cylinder of the machine upon which he was set to work was not equipped as cards in common and ordinary use were, he should show that fact by the testimony of witnesses who knew how cards in common use were equipped, but not by proof that he knew of or had worked upon two machines with equipment differing from that used on the defendants' machines and not shown to be in common use.   When such evidence is thus presented it is not competent, and when admitted is prejudicial because it erects a false standard for the jury to judge the defendants' conduct by.   *Hill* v. *Railroad*, 55 Me. 438;   *Littleton* v. *Richardson*, 32 N. H. 59;   *Hubbard* v. *Concord*, 35 N. H. 52;   *Congdon* v. *Company*, 66 Vt. 255, 262.

This evidence was offered at a time when no testimony had been introduced showing how doors to cards in common use were equipped.   But notwithstanding this, if the plaintiff had then stated to the court that he would afterward make the evidence competent by showing how machines in common use were equipped, and that the two machines upon which he had worked were equipped like them, as bearing upon his knowledge derived from operating such machines, it might have been received *de bene*.   But as this purpose was not made known to the court, and the apparent purpose of the evidence was to show that the defendants were negligent, by proving that the doors on the two machines on which the plaintiff had worked had fastening devices while the defendants' had none, it was properly excluded.   *Tabor* v. *Judd*, 62 N. H. 288, 292.   If the plaintiff had desired to avail himself of this evidence for the purpose for which he now claims, he should have renewed his offer after testimony had been submitted showing how doors to machines of this character in common use were equipped; but as he did not do so, he cannot now complain.

3.  The plaintiff's experts testified that they were familiar with revolving-top flat cards; that for a series of years they had been engaged in operating and selling cards, and had been in substantially all the mills in New England where cards were used, and in Southern mills; that they had seen cards of the same make as those used by the defendants, and had caused them to be operated under their direction, but had never seen doors hung as they were on the defendants' machines without a fastening device, except in the defendants' mills in Penacook.

After the plaintiff had rested his case, the defendants were permitted to show that in various mills in New England, including those specially referred to by the plaintiff's experts, machines of the make used by the defendants were operated, and that they had no device for fastening the doors.   This evidence was competent, as it tended to contradict the testimony of the plaintiff's experts,

and was properly admitted. *Green* v. *Bedell*, 48 N. H. 546, 549 ; *Martin* v. *Towle*, 59 N. H. 31; *Quimby* v. *Blackey*, 63 N. H. 77 ; *Spalding* v. *Merrimack*, 67 N. H. 382; *Perkins* v. *Roberge*, 69 N. H. 171.

4. When the defendants had rested, the plaintiff offered to show in rebuttal that certain manufacturers had affixed fastening devices to cards like the defendants'. This evidence did not rebut any evidence introduced by the defendants, and for this reason, if for no other, was properly excluded. *Dodge* v. *Carroll*, 59 N. H. 237.

5. The plaintiff claimed that he was ignorant of and did not appreciate the dangers liable to arise from the unfastened door being thrown open while the machine was in operation, and that the defendants were negligent if the door was thrown open in any of the three ways in which his evidence tended to show that it might have been opened ; and he excepted to the charge of the court upon the ground that it did not permit the jury to find the defendants guilty if the door was thrown open in any of the ways claimed by the plaintiff, but required them to find, before they could render a verdict for the plaintiff, in which one of the three ways it was opened. We are of the opinion, however, that the charge cannot properly be given this construction.

The instructions given to the jury as to this matter are as follows : "The plaintiff must have shown by the evidence what the cause of the door being open was. It is not to be left to guess or conjecture. You must weigh the evidence and from it find what made the door come open, and further find that such cause was one the defendants should have provided against; otherwise, the defendants are not liable. . . . If you find upon all the evidence that a reasonably prudent person might use these Hetherington cards of the model 1900, then the defendants are without legal fault and are entitled to your verdict. But if, on the other hand, it seems to you that the exercise of a reasonable degree of care would forbid the use of these cards so equipped, and that because of such negligence the door became opened from some cause which the defendants ought to have anticipated and provided against,— if this is your view of the facts,—then you will come to the second of the three questions. Unless you find (1) that the door was not left open by Chenette, (2) that it was forced open by causes which the defendants ought to have provided against, (3) that the likelihood of such a happening would be unknown to an experienced card-stripper, and was in fact unknown to the plaintiff, and (4) that he did not carelessly get his hand into the place of danger,— unless the plaintiff has satisfied you by a fair balance of the probabilities upon each of these questions that he is right,—your verdict will be for the defendants. But if upon all these questions

you are convinced of the truth of the plaintiff's claim, then your verdict will be for him and you will assess his damages."

From the foregoing it appears that the court told the jury at the very close of his charge, and when he was summing up the questions which they were to consider, that they might find the defendants liable, if the door came open from any cause which they ought reasonably to have anticipated and provided against, but not if it was left open through the negligence of Chenette, or if the plaintiff was injured through his own negligence; and taking the charge as a whole, we do not think the jury could have been misled in the way the plaintiff claims.

6. The plaintiff's declaration charged the defendants with negligence because of their failure to furnish a reasonably safe carding machine and to instruct or warn the plaintiff as to certain dangers in its operation. It did not allege that they were negligent because of their failure to provide competent servants. The defence proceeded upon the ground that the machine was suitable, and that the plaintiff's injury arose through his own carelessness, or that of Chenette, his fellow-servant, in leaving the door open. The claim now made by the plaintiff is that the case shows that he introduced evidence tending to prove that Chenette was incompetent and that he should have been permitted to go to the jury upon that issue. But as we understand it, when the plaintiff closed his evidence and rested he had not introduced any evidence showing that Chenette was negligent, or that he was not competent to close the door. In fact, the case states that there was no evidence that Chenette was not competent to close the door. If this is the correct view of the matter, it is plain that the plaintiff's requests for instructions which assumed that the evidence warranted a finding of Chenette's incompetency, had no application and were properly denied.

*Exceptions overruled.*

All concurred.